UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Debora Turner, | Civil Action No.: _____ |
| Plaintiff, | |
| vs. | |
| AnMed Health Medical Center a/k/a AnMed Health; Aaron C. MacDonald, MD; Larry Davidson, MD; Christie B. Mina, MD; Piedmont Spine and Neurosurgical Group, P.A.; Donald Woodburn, MD; 24 ON Physicians, PC; Stephen Hand, MD; Syed W. Malik, MD; Longinus O. Agor, MD; Jitendrakumar Patel, MD; Victor Sidhom, MD; Clint Seymour, MD, HealthSouth Corporation d/b/a AnMed Health Rehabilitation Hospital; and Chris Johnson, PA-C, | **COMPLAINT**<br>**(Jury Trial Requested)** |
| Defendants. | |

The Plaintiff, Debora Turner, would respectfully show unto this Honorable Court as follows:

**PARTIES**

1. The Plaintiff, Debora Turner, is a resident of the state of Georgia.

2. Upon information and belief, the Defendant AnMed Health Medical Center, also known as AnMed Health (hereinafter referred to as "AnMed Health"), is a private hospital facility located at 800 North Fant Street in Anderson, South Carolina. During the time period in question, Plaintiff received medical treatment at AnMed Health. At all times mentioned herein, this Defendant was acting by and through its agents, servants, and/or employees and had a doctor/patient relationship with the Plaintiff.

1

3. Upon information and belief, the Defendant Aaron C. MacDonald, M.D., is a physician licensed by the state of South Carolina, and is employed by the Piedmont Spine and Neurological Group, P.A. located at 109 Montgomery Drive, Anderson, SC 29621. During the time period in question, this Defendant was acting individually and as an agent, servant, and/or employee of the above named Defendant Piedmont Spine and Neurological Group, P.A. and/or AnMed Health. Additionally, at all times mentioned in this Complaint, Dr. MacDonald provided care to the Plaintiff at the Defendant AnMed Health and had a doctor/patient relationship with the Plaintiff.

4. Upon information and belief, the Defendant Larry Davidson, M.D. is a physician licensed by the state of South Carolina, and is employed by the Piedmont Spine and Neurological Group, P.A. located at 109 Montgomery Drive, Anderson, SC 29621. During the time period in question, this Defendant was acting individually and as an agent, servant, and/or employee of the above named Defendant Piedmont Spine and Neurological Group, P.A. and/or AnMed Health. Additionally, at all timed mentioned in this Complaint, Dr. Davidson provided care to the Plaintiff at the Defendant AnMed Health and had a doctor/patient relationship with the Plaintiff.

5. Upon information and belief, the Defendant Christie B. Mina, M.D. is a physician licensed by the state of South Carolina, and is employed by the Piedmont Spine and Neurological Group, P.A. located at 109 Montgomery Drive, Anderson, SC 29621. During the time period in question, this Defendant was acting individually and as an agent, servant, and/or employee of the above named Defendant Piedmont Spine and Neurological Group, P.A. and/or AnMed Health. Additionally, at all timed mentioned in this Complaint, Dr. Mina provided care to the Plaintiff at the Defendant AnMed Health and had a doctor/patient relationship with the Plaintiff.

6.     Upon information and belief, the Defendant Piedmont Spine and Neurological Group, P.A. is a private health facility incorporated in South Carolina, and its principal place of business is located at 109 Montgomery Drive in Anderson, SC 29621. During the time period in question, this Defendant was acting through its agents, servants, and/or employees, to include the above-named Defendants Larry Davidson, M.D., Aaron C. MacDonald, M.D., Christie B. Mina, M.D., and Chris Johnson, PA-C.

7.     Upon information and belief, the Defendant Donald Woodburn, M.D. is a physician licensed by the state of South Carolina; he works for 24 ON Physicians, Inc. and provides medical services to patients at AnMed Health. During the time period in question, this Defendant was acting individually and as an agent, servant, and/or employee of the Defendant 24 ON Physicians and/or AnMed Health. Additionally, at all timed mentioned in this Complaint, Dr. Woodburn provided care to the Plaintiff at the Defendant AnMed Health and had a doctor/patient relationship with the Plaintiff.

8.     Upon information and belief, 24 ON Physicians, PC is located at 800 North Fant Street in Anderson, SC 29621. It is incorporated in South Carolina, and its registered agent is Corporation Service Company located at 1703 Laurel Street, Columbia, SC 29201. Upon information and belief, this Defendant employed Donald Woodburn, M.D. to provide medical care to patients at AnMed Health, including the Plaintiff, during the time period in question.

9.     Upon information and belief, Stephen Hand, M.D. is a physician licensed by the state of South Carolina and employed by AnMed Health Medical Center, 2000 E. Greenville Street, Suite 1100 in Anderson, SC 29621. During the time period in question, this Defendant was acting individually and as an agent, servant, and/or employee of the Defendant AnMed

3

Health. Additionally, at all timed mentioned in this Complaint, Dr. Hand provided care to the Plaintiff at the Defendant AnMed Health and had a doctor/patient relationship with the Plaintiff.

10.     Upon information and belief, the Defendant Syed W. Malik, M.D. is a physician licensed by the state of South Carolina and is employed by AnMed Health Pulmonary & Sleep, 2000 E. Greenville Street, Suite 1100 in Anderson, SC 29621. During the time period in question, this Defendant was acting individually and as an agent, servant, and/or employee of the Defendant AnMed Health. Additionally, at all timed mentioned in this Complaint, Dr. Malik provided care to the Plaintiff at the Defendant AnMed Health and had a doctor/patient relationship with the Plaintiff.

11.     Upon information and belief, the Defendant Longinus O. Agor, M.D. is a physician licensed by the state of South Carolina and works for AnMed Health in Anderson, SC. During the time period in question, this Defendant was acting individually and as an agent, servant, and/or employee of the Defendant AnMed Health. Additionally, at all timed mentioned in this Complaint, Dr. Agor provided care to the Plaintiff at the Defendant AnMed Health and had a doctor/patient relationship with the Plaintiff.

12.     Upon information and belief, the Defendant Jitendrakumar Patel, M.D. is an internal medicine doctor who provided medical services at AnMed Health in Anderson, SC during the time period in question. It appears he now works at 2435 Forest Drive, Columbia, SC 29204. During the time period in question, this Defendant was acting individually and as an agent, servant, and/or employee of the Defendant AnMed Health. Additionally, at all timed mentioned in this Complaint, Dr. Patel provided care to the Plaintiff at the Defendant AnMed Health and had a doctor/patient relationship with the Plaintiff.

13. Upon information and belief, the Defendant Victor Sidhom, M.D. is an internal medicine doctor located at 125 Commonwealth Drive, Greenville, SC 29615. He provides medical services at AnMed Health Medical Center in Anderson, SC. During the time period in question, this Defendant was acting individually and as an agent, servant, and/or employee of the Defendant AnMed Health. Additionally, at all timed mentioned in this Complaint, Dr. Sidhom provided care to the Plaintiff at the Defendant AnMed Health and had a doctor/patient relationship with the Plaintiff.

14. Upon information and belief, the Defendant Clint Seymour, M.D. is a physician licensed by the state of South Carolina and is employed by AnMed Health Wound, 2000 East Greenville Street, Suite 5110 in Anderson, SC 29621. During the time period in question, this Defendant was acting individually and as an agent, servant, and/or employee of AnMed Health. Additionally, at all timed mentioned in this Complaint, Dr. Seymour provided care to the Plaintiff at the Defendant AnMed Health and had a doctor/patient relationship with the Plaintiff.

15. Upon information and belief, the Defendant AnMed Health Rehabilitation Hospital is located in Anderson, South Carolina and is owned by HealthSouth Corporation. HealthSouth Corporation is a Delaware corporation, and its registered agent is CT Corporation System, 2 Office Park Court, Columbia, SC 29223. During the time period in question, this Defendant was acting through its agents, servants, and/or employees. Additionally, at all timed mentioned in this Complaint, these agents, servants, and/or employees provided care to the Plaintiff at the Defendant AnMed Health Rehabilitation Hospital and had a doctor/patient relationship with the Plaintiff.

16. Upon information and belief, the Defendant Chris Johnson, PA-C works for Piedmont Spine and Neurological Group, P.A. at 109 Montgomery Drive, Anderson, SC 29621.

During the time period in question, this Defendant was acting individually and as an agent, servant, and/or employee of the Defendant Piedmont Spine and Neurological Group, P.A. and/or AnMed Health. Additionally, at all timed mentioned in this Complaint, Mr. Johnson provided care to the Plaintiff at the Defendant AnMed Health and had a doctor/patient relationship with the Plaintiff.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction to adjudicate the allegations set forth herein pursuant to § 28 U.S.C. 1332.

18      Venue is proper in this court because the Defendants are located in Anderson County, South Carolina, and the most substantial part of the alleged acts and omissions giving rise to the cause of action occurred in this County.

19.     On July 7, 2016, the Plaintiff filed a Notice of Intent to File Suit in a Medical Negligence Case pursuant to S.C. Code 15-79-125, Case Number 8:16-mc-00296-TMC. A pre-suit mediation was conducted on November 23, 2016, during which time the mediator declared an impasse. The instant Summons and Complaint are now ripe for filing.

## FACTS

20.     On August 13, 2013, the Plaintiff, Ms. Turner, age 53, underwent cervical spine surgery performed by the Defendant, Aaron C. MacDonald, M.D., at AnMed Health Medical Center.

21.     On August 14, 2013, the following day, there was an accident in transport where Plaintiff was struck by an IV pole on the head, neck, and right upper back. A few hours later, she was noted to suffer from mental status altercation and had removed her cervical stabilizer.

22.     The following day, on August 15, 2013, Plaintiff had developed pleurodynia, hemoptysis, tachypnea, hypoxemia and wheezing. A chest x-ray disclosed bilateral pulmonary infiltrates. Nebulizer treatments, CPAP and intravenous antibiotics were begun, and lab studies were ordered.

23.     On August 16, 2013, Plaintiff ambulated 6 feet with a rolling walker. NT-proBNP level was 1614, making congestive heart failure extremely likely. D-Dimer was also elevated, reflecting ongoing activation of the hemostatic system, not particularly useful in a patient who had undergone surgery 3 days prior. Lovenox was started. Literature recommends beginning DVT prophylaxis in a neurosurgical patient, if not preoperatively, then no more than 24 hours post-operatively.

24.     Early the next morning, Plaintiff had pulled off her CPAP mask, indicating that she still had use of her upper extremities. She walked to the bathroom with assistance the morning of August 18, 2013. A CT Angiogram on that day disclosed multiple pulmonary emboli. Lovenox was continued.

25.     On August 21, 2013, Plaintiff was transferred to Anmed Health's acute rehabilitation facility. That afternoon, she complained of 10/10 pain and noted numbness of the finger tips bilaterally. These findings are not consistent with the expected postoperative course.

26.     Plaintiff was still complaining of 10/10 pain as of the morning of August 24, 2013. By 3:00 p.m., she was noted to have developed urinary retention. There is no record indicating she was evaluated by a physician for this problem.

27.     Early in the morning on August 25, 2013, Plaintiff stated that she could not move her arms. She could not squeeze the nurse's fingers on request. The attending physician was called, but did not respond. In less than 2 hours, this had progressed to flaccid quadriplegia.

28.     Around 1:00 a.m. on August 25, 2013, Plaintiff was transferred back to the hospital. She presents to the hospital via EMS from Health South Rehabilitation. The ER record indicates she is "12 days status post posterior approach laminectomy per review of medical records C3-C7 with bone graft and hardware placement she states today she started developing back spasms starting about 4:00 in the afternoon she started with sensation about the top of her shoulder blades bilaterally and in a descending fashion she's developed numbness paresthesias now with weakness and cannot move her arms or legs with a descending development of quadriplegia, she denies any pain in her neck or back other than back spasms, she states feels short of breath but denies any cough denies any tongue swelling denies chest pain or palpitations. Patient denies any neck pain denies any falls or weakness."

29.     The emergency department physician contacted the on-call neurosurgeon. The consultant stated that the presentation was very atypical for postoperative complications and recommended immediate cervical MRI. In the MRI suite, she sustained a cardiopulmonary arrest requiring intubation, mechanical ventilation, and pressor medication. She was transferred to the Intensive Care Unit. The Hospitalist's admitting note comments that the ED physician stated the on-call neurosurgeon was of the opinion that it was unlikely that Plaintiff's complaint that she could not feel from the shoulders down was accurate or truthful that far out from surgery. In any event, said neurosurgeon subsequently evaluated Plaintiff several hours later, indeed noting flaccidity and lack of voluntary motion. He felt that she was too unstable from a hemodynamic standpoint to tolerate traveling to MRI for further evaluation. High in the differential diagnosis for this set of clinical circumstances is spinal or neurogenic shock, secondary to a spinal cord injury. Therefore, the very hemodynamic instability that was exhibited might very well have been due to a condition for which an MRI was necessary to diagnose.

30. A CT scan of the cervical spine was performed on August 26, 2013. This was unrevealing. It came to light on that day that Plaintiff could not have an MRI at that facility because of weight, hemodynamic status notwithstanding.

31. On August 29, 2013, Plaintiff was transferred to Carolinas Health System. An MRI on that day disclosed likely infarction of nearly the entire cervical spinal cord, which explained her quadriplegia.

32. Plaintiff is now a quadriplegic and requires inpatient care and assistance at an extended care facility.

33. The above named Defendants, to include Drs. Aaron C. MacDonald, Larry Davidson, Christie Mina, Donald Woodburn, Stephen Hand, Sayed Malik, Longinus Agor, Jitendrakumar Patel, Victor Sidhom, Clint Seymour, and Chris Johnson, PA-C saw and/or treated Ms. Turner during her stay at AnMed Health Medical Center and/or AnMed Health Rehabilitation Hospital from her admission on August 13, 2013 until she was transferred to Carolinas on August 29, 2013.

**FOR A FIRST CAUSE OF ACTION AGAINST THE DEFENDANTS**
**(Negligence/Gross Negligence/Recklessness/Medical Malpractice)**

34. The Plaintiff reiterates each and every allegation stated hereinabove as if repeated verbatim herein.

35. The above set forth incidents and the Plaintiff's resulting injuries and damages were proximately caused by their negligent, grossly negligent, reckless, willful, and wanton acts of the Defendants, by and through its agents, servants, and/or employees in one, more, or all of the following particulars:

    a) in failing to provide the appropriate, reasonable and necessary medical care to the Plaintiff;

b) In failing to exercise reasonable care to ensure the Plaintiff was properly transported;

c) In over-sedating the Plaintiff;

d) In failing to properly observe the Plaintiff so she does not have the opportunity to remove her collar;

e) In failing to monitor the effects of PCA;

f) In failing to timely begin DVT prophylaxis in a neurosurgical patient;

g) In prematurely releasing the Plaintiff to a rehab facility instead of monitoring her condition in a hospital setting;

h) In failing to recognize, note, and act upon complaints of 10/10 pain and numbness of the finger tips bilaterally, which is not consistent with the expected postoperative course;

i) In failing to evaluate new onset urinary retention in a patient recovering from spinal surgery in a timely fashion;

j) In failing to have the Plaintiff evaluated by a physician after noted urinary retention;

k) In failing to immediately transfer the Plaintiff to the ER after symptoms of back spasms and sensation at the top of her shoulders at approximately 4:00 p.m. on August 24, 2013;

l) In failing to consider the differential diagnosis of spinal, or neurogenic shock, secondary to a spinal cord injury;

m) In failing to recognize that the Plaintiff's hemodynamic instability might have been due to a condition for which an MRI was necessary to diagnose;

n) In transferring a patient with an acute neurologic emergency to a facility without the capacity to perform an emergency MRI;

o) In failing to timely recognize and treat the Plaintiff after she exhibited symptoms which required treatment; and

p) In other particulars that will be developed in discovery.

36. The above acts of negligence and breaches of the proper standard of care (by and through the employees, agents, servants, and/or physicians of the Defendants) have caused the Plaintiff to suffer severe conscious pain and suffering, leading to permanent injuries including her quadriplegia, the need for ongoing medical treatment and management, and severe emotional distress. As such, the Plaintiff is entitled to ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES from the Defendants.

**WHEREFORE**, the Plaintiff prays judgment against the Defendant for ACTUAL, CONSEQUENTIAL, and PUNITIVE damages, for the costs of this action, and for such other and further relief as the Court may deem just and proper.

*(Signature Page Follows)*

Dated this 13th day of January, 2017 in Georgetown, South Carolina.

  s/J. Edward Bell, III
J. Edward Bell, III
Deloris K. Cromartie
Bell Legal Group, LLC
Post Office Box 2590
Georgetown, SC 29442
Telephone:  843-546-2408
Facsimile:  843-546-2906

AND

James E. Carter, Esq., Admitted Pro Hac Vice
216 North Main Street
Madison, GA 30650
O: 706-438-4225
F: 866-440-1141

ATTORNEYS FOR THE PLAINTIFF