Neil Nurse Consulting, LLC

Helen P. Neil, RN, MSN, HCSM, CLNC, FCN
*Certified Legal Nurse Consultant*
Debora Turner v. AnMed Health Medical Center a/k/a AnMed Health; et al.

In the United States District Court, District of South Carolina, Anderson Division

Civil Action No. 8:16-MC-296-TMC

## Rule 26 Expert Report of Rehabilitation Nurse – Helen Neil, RN

My name is Helen P. Neil, RN. MSN-HCSM, CLNC, FCN and I have been a nurse since 1985. As my CV indicates I have experience in medical surgical nursing, telemetry, hospital administration, spinal cord injury, brain injury, orthopedics, oncology and rehabilitation nursing. I am a currently a full time nursing instructor for LSU Health School of Nursing for the Bacholor of Science in Nursing Program. My clinial experience in nursing education since 2015 has been on a Rehabilitation Unit. I have worked in rehabilitation off and on since 1987 including Spinal Cord Injury. I have attached my current CV.

In forming my opinions, I reviewed the following materials:

1. Plaintiff's Complaint (w/ Affidavit of Jay B. Krasner, MD);

2. Medical Records of Plaintiff Debora Turner:
   a. AnMed Health Records-000001-000544;
   b. AnMed Health Records-000545-001062; and
   c. HealthSouth AnMed Rehabilitation Hospital - Medical Records of Plaintiff Debora Turner (*HealthSouth AnMed Rehab Hospital 001 - 218*).

3. Expert Reports Pursuant to Federal Rules of Civil Procedure (FRCP) 26(f):
   a. Koebbe, Christopher MD (Plaintiff's Neurosurgery Expert);
   b. Krasner, Jay B. MD (Plaintiff's Internal Medicine Expert);
   c. Martenson, Susan RN (Plaintiff's Rehab Nurse Expert);
   d. Merritt, Lisa MD (Plaintiff's Physical Medicine and Rehabilitation Expert); and
   e. Dr. Joseph Kleinman (Plaintiff's Radiology Expert).

4. Deposition Transcripts w/ Exhibits for:
   a. Manning, Neilie (AnMed HealthSouth Rehab. – Case Manager);
   b. Morris, Lee RN;
   c. Sweat, Nicole LPN;
   d. Koebbe, Christopher MD (Plaintiff's Neurosurgery Expert); and
   e. Martenson, Susan RN (Plaintiff's Rehab Nurse Expert).

**Exhibits that may be referenced to support my opinions:**
- Nursing documentation from Healthsouth, including but not limited to assessments, flowsheets, and Medication Administration Records (MAR) during her stay
- Nursing documentation from AnMed Hospital related to pain management
- Physcan documentation and orders from Healthsouth
- AnMed Rehab Policies and Procedures
- Depositions

Neil Nurse Consulting, LLC

Helen P. Neil, RN, MSN, HCSM, CLNC, FCN
*Certified Legal Nurse Consultant*

Debora Turner v. AnMed Health Medical Center a/k/a AnMed Health; et al.

In the United States District Court, District of South Carolina, Anderson Division

Civil Action No. 8:16-MC-296-TMC

**Rule 26 Expert Report of Rehabilitation Nurse – Helen Neil, RN**

**Opinions:**
1. **Care Provided by Healthsouth Nursing Staff:**
    a. The care provided to Ms. Turner by nursing staff at Healthsouth was within the accepted standards of care for rehabilitation nurses, and included complete physical assessments, appropriate interventions, monitoring, and re-assessments.
2. **Patient Participation in Rehab Therapy:**
    a. Ms. Turner participated in her rehab program on 08/22/13 and 08/23/13. Plaintiff's nurse expert omitted important information in her statement that Ms. Turner "could no longer participate in her rehabilitation program". Ms. Turner was not physically unable to participate in therapy on 08/24/13 but chose not to, which is the same as a refusal. Just because she did not want to did not mean she was unable to participate. The accepted standards of care for rehab nurses does not require a physician to be immediately notified if a patient refuses therapy.
3. **Pain Management:**
    a. Ms. Turner had a long history of chronic pain prior to her spine surgery. After spine surgery she continued to have severe pain which was treated at AnMed Hospital with IV pain medications, which tend to act more quickly than pain pills by mouth. It was common for her to report pain 10/10 prior to surgery, during her recovery period, and throughout her stay at Healthsouth Rehab. Plaintiff's nurse expert Susan Martenson suggests Ms. Turner's pain level had progressed, or worsened during her stay at Healthsouth. Reports of pain 10/10 at Healthsouth did not represent an escalation of pain based on her pain history. Dr. Seymour and Healthsouth nurses worked together to find the right combination of pain medications to alleviate pain. Healthsouth staff appropriately assessed pain, treated it per MD orders: her pain was re-assessed and documented following the administration of pain medication to determine its effectiveness.
4. **Chest pain morning of 08/24/13:**
    a. If Ms. Turner had no cardiac history and reported chest pain, it may have been necessary to notify the physician. But Ms. Turner was complaining of both pain in general and chest pain. She had standing order nitroglycerin, which was administered appropriately and chest pain resolved. There was no documentation that patient was diaphoretic (sweating consistent with MI). Her other pain persisted. The MD was to be rounding shortly and was notified in a reasonable amount of time. Because there was a standing order and the physician was in to see the patient around 0700, the nurse acted within the accepted standards of care for rehabilitation nurses.

Neil Nurse Consulting, LLC

Helen P. Neil, RN, MSN, HCSM, CLNC, FCN
*Certified Legal Nurse Consultant*
Debora Turner v. AnMed Health Medical Center a/k/a AnMed Health; et al.

In the United States District Court, District of South Carolina, Anderson Division

Civil Action No. 8:16-MC-296-TMC

**Rule 26 Expert Report of Rehabilitation Nurse – Helen Neil, RN**

5. **Urinary Retention the afternoon of 08/24/13:**
    a. Urinary retention in the rehabilation setting may happen due to many different causes, including certain medications, **such as medications and neurogenic bladder.** As is the protocol in this case, bladder scanning is a routine procedure in this setting and routine rehab admission order sets include standing orders for intermittent catheterization.
    b. There was a standing order to in/out cath patient every 6 hours. The nurse missed the 6-hour window which is in violation of the order, but the amount of urine she got around 3:00 pm was within normal limits (850 divided by 2 if she had been cathed every 6 hours). Upon being notified that the patient had not voided since 0300, she cathed the patient which was the appropriate action to take.
    c. This patient was not a fresh surgery. On a rehab unit, a single episode of urinary retention this far out from surgery did not necessitate a call to the physician. In a patient who rested well throughout the day, and had no oral intake, her first thought would not be that the inability to urinate was due to a neurological cause. Placing an obese patient on a bedpan requires a lot of movement and repositioning on the part of the patient. Ms. Turner did not report any symptoms suggesting neurologic impairment prior to, during, or following this activity.
    d. The standing order was to cath every 6 hours and it did not require the physician to be notified. Following the intermittent catheterization order to cath the patient if she had not voided was within the standard of care for rehab nurses.
6. **Blood Pressure the evening of 08/24/13:**
    a. Plaintiff's nurse expert, Susan Martenson, who is not a rehabilation nurse, criticized nursing staff for not notifying the physician for changes in BP the the evening of 08/24/13. Martenson failed to consider changes to the patient's medications, and their expected effects. Dr. Seymour had increased Ms. Turner's pain medication dosage to provide pain relief. A drop in blood pressure can be anticipated following the administration of antihypertensives and pain medications such as those Ms. Turner was prescribed. Nursing staff checked and re-checked her blood pressure appropriately. She was monitored as per the standard of care for a patient on a rehabilitation unit. Ms. Turner's blood pressure never dropped to the level requiring activation of the Rapid Response system **per policy**, nor was she symptomatic.
7. **Timing of Transfer to AnMed following onset of quadriplegia:**
    a. Nurses acted quickly to notify the physician and prepare Ms. Turner for transport following the onset of quadriplegia. The nurse applied oxygen appropriately. Nursing staff documented a rapid response, and transferred the patient out in an impressively short amount of time.

Neil Nurse Consulting, LLC



Helen P. Neil, RN, MSN, HCSM, CLNC, FCN
*Certified Legal Nurse Consultant*

Debora Turner v. AnMed Health Medical Center a/k/a AnMed Health; et al.

In the United States District Court, District of South Carolina, Anderson Division

Civil Action No. 8:16-MC-296-TMC

**Rule 26 Expert Report of Rehabilitation Nurse – Helen Neil, RN**

These opinions are based on my education, practice, and experience as a rehabilitation nurse for the last 20+ years.

**List of Expert Testimony in the Past Four (4) Years:**

| Date | Case | Defense Attorney | Plaintiff Attorney |
|---|---|---|---|
| 02/17/18 | Stall vs. HealthSouth East Valley | Gust Rosenfeld, PLC | Thompson Law Firm, LLC |

I am available for deposition to discuss my opinions in further detail if necessary. I reserve the right to change my opinion if further information is received which impacts the opinions given here. I reserve the right to supplement the discussion of both my opinions and the basis for my opinions in response to questioning at deposition.

Sincerely,

*Helen P. Neil, RN, MSN-HCSM, CLNC, FCN*

Helen P. Neil, RN, MSN-HCSM, CLNC, FCN
October 09, 2018